Council for the appellant ready to proceed? Do we have a motion? Ignitions? Do we have an ignition? I said ignitions. Okay. I'm going to move the admission of three of my current law firms. You probably should stand. It's a pleasure and a privilege to move all of your admissions. We're about to leave me for very bright and promising careers. They've all been wonderful thinkers and researchers and conversation partners, writers, and chamber's companions. For each of my personal experience, I will attest to their qualifications to be members of the bar of this court, which is very much the richer for their presence. And now I will do each of the three in turn. First, I move the admission of Amy Feinberg, who is a member of the bar and is in good standing with the highest court of Colorado. And I remove the admission of Samuel Benjamin Goldstein, who is a member of the bar and is in good standing with the highest court, California. And I move the admission of Claire Williams, who is a member of the bar and is in good standing with the highest court of Minnesota. I have knowledge of all of their credentials, and I'm satisfied that each one possesses the necessary qualifications. Mr. Clement, do you want to take any of the witnesses on the bar again? Well, I'll just make a comment for the benefit of the audience. In this court, as you all would know, all the judges have law clerks. And during the course of doing our work, the clerks, because we're all under one roof and in one building, the clerks from one chamber to another chamber frequently interact with each other and exchange ideas and thoughts. And I just want to say that I'm aware of the skills of these three applicants to the bar, and they have been materially helpful to the work of the court in the time they've been here. And so I'm pleased to vote in favor of your admission to the bar, and I look forward to them coming back. And I promise you that you will be treated just as harshly as we treat everybody else. And I join in agreeing to that motion, so it is granted. Okay, is the appellant ready to proceed? Yes, Your Honor. May it please the court, Deanne Maynard on behalf of Balsam. I'd like to try to reserve three minutes for rebuttal while also addressing jurisdiction, claim construction, and the disputes of fact that exist even under the district court claim construction. I'd like to start with jurisdiction, because this case should have been dismissed at the outset for lack of Article III jurisdiction. At the time that UCP brought this declaratory judgment suit, it had no U.S. customers, had no U.S. sales, was making no meaningful progress towards U.S. sales, and Balsam had shown— even the day before or something—the front gate litigation was settled. They were actually selling the products into the United States. Why is that not exactly the common-sense situation that Menahieu says is one for which the court should be available to figure out whether, if they start doing it again tomorrow, what they were doing yesterday, they're at risk? Well, because they've made no meaningful efforts to start doing tomorrow what they were doing yesterday, Your Honor. And this court has held customer suits alone are not enough. That was the case in Allied. The customer had been sued, but no actions had been taken towards the supplier. Is Allied the one about the Mexican patent? It is, Your Honor. Well, that's different. Let's assume that's different. Well, it is different, Your Honor, but it's the same in one meaningful respect, which is that the Mexican patent there was the same as the U.S. patent. The supplier in that case was making— Right, but the willingness to go into one system's courts as opposed to another might, in fact, be quite different. But here, Balsam was quite willing to go into the U.S. courts to enforce the very patent against the very same products. Well, but it had chosen to sue Frontgate, and it had opportunities throughout that suit to add UCP, considered doing so, and affirmatively did not do so. And it's UCP's burden to show Article III standing. And here at the time of the complaint, they have no meaningful steps to find new customers or to make new sales, and they're only— Well, how is the case materially different from the Arkham or the Honeywell case? Well, that case, Your Honor— In that case, you had a French manufacturer who wanted to manufacture a thing to be put in cars. Honeywell was doing the same thing in the United States. Honeywell was issuing contracts with people to make the stuff. The guy in France had a factory that made it, but he had done nothing. He had not taken any steps to enter into a contract. He simply wanted to find out whether or not he would be infringing if he entered the market. That's not how I read that case, Judge Glender. I understand that case— What facts do you add beyond the ones I just gave you, which are the only ones in the case? My reading of the case, Your Honor—my memory of the case is that the DJ, the declaratory judgment blanket there, had already responded to one customer request to supply the product and was poised to respond to others. That was Honeywell. In that sentence, that was Honeywell. The opinion went on to say, if we don't grant DJ, we'll put the French guy in the position that he will have to go out and try to make those contracts. That's not my memory of the case, Your Honor, but the point here is that there have been no concrete steps at the time that they filed their complaint, and Baltimore showed no interest in suing them. If the court does find jurisdiction here, however, we would like the court and we think the court should reach the claim construction issues. Well, if I'm right, that the French company was not engaging in any contracts, then would you concede that the cases are on all fours? No, Your Honor, because while that might get UCP's affirmative actions, Baltimore had showed no affirmative interest in suing UCP. Let me ask you this. On page four of the gray brief, you say, Balsam's purported threat to sue UCP was neither issued by Balsam nor communicated to UCP, and that they refer to a never filed draft case management statement from the front gate litigation. Was this a draft, and if so, is there any evidentiary foundation for it? How did anybody cite to it? It was a draft. It was communicated between the parties in the front gate case. Front gate was represented by the same counsel as represents UCP. It was not what was filed in the front gate case. I believe it made its way into this case because it was attached to either the complaint or the amended complaint here in the Territory Judgment Act case. But in any event, Your Honor, it was communicated at most to front gate, not to UCP. I would like to shift those. But its foundation, then, is that it could be still a fugitive piece of paper that's attached to a filed document. I don't see any foundation for it that much. Well, I believe the other side attached it to one of their complaints in this declaratory judgment action, but I do not believe it shows any action by Balsam to suggest an actual intent to sue UCP. In fact, it shows the opposite. It was not communicated directly to UCP, and UCP, although at one point, I mean, Balsam did at one point consider suing UCP in the front gate litigation. It affirmatively chose not to. Does the record tell us how many UCP trees were sold through front gates when front gate was selling them? Even in ballpark terms, is it three or is it 300? I do not know the answer to that, Your Honor. Okay. Yeah. So, if I may. What are we supposed to do with Paragraph 7 of Mr. Wee's declaration, which is made after the D.J. was filed, a few months after? So, the declaration that he filed, right? So, one, as you say, it's after the complaint was filed and after arising facts. I didn't understand you in your briefs to be saying we should ignore it. I beg your pardon? I didn't understand you in your briefs. Maybe you're saying it now to say we would ignore Paragraph 7 because it was filed after the complaint was filed. I think you do ignore after arising facts, Your Honor. But not necessarily because the declaration was filed after. I mean, nobody files a declaration. You don't have to file a declaration with your complaint. Your point is that the subject of the declaration was not facts at the time of the filing. Those facts are certainly not alleged to be facts at the time of the original filing in the declaration. And, again, it's their burden to show that at the time they filed their complaint and their complaint. Well, he said he's working for a warehouse or he's taking steps to make direct sales. We assume that's all after the filing of the complaint. It's certainly not alleged in the original complaint. And it does not state in here, Judge Clevenger, that it was the truth and a fact as of the time of the original complaint. I think two points about that. One is you can't have after arising facts for Article III jurisdictions. The Supreme Court said so. This court has said so. Right, but the question is whether what's described there without being too picky about what's inferences from what's not said, that when you have a preexisting long course of conduct of selling the product and, I don't know, was this a few months later or a few weeks later or something? He says we're searching for a warehouse. The inference is they want to continue. They even wanted at the day that they filed the complaint to continue the business that they had been conducting. But at the time they filed the complaint, Judge Toronto, it was a mere hours after the court had dismissed the front gate litigation. That was their exclusive seller in the United States. They didn't have a game plan. They stood up at the altar. All of a sudden the bride went and she stood up at the altar. What am I going to do next? And you're saying, well, where are their plans? Did they have a backup plan? Because at any time they previously could have lost the front gate relationship. And so your point, I think, would be that they didn't have any backup plans. They can't point to anything they were planning to do if their stream of commerce got cut off. That's right, Judge Plevenger. Even though it looked like until the dismissal, like maybe front gate was actually going to win the litigation and they didn't need a backup plan. And I gather the settlement was not – UCP itself was not privy to the settlement. That's correct, Your Honor. So two points, though. What's correct? It's correct that UCP was not privy to the settlement. Is it correct? There was a compound question there. Is it also correct that it looked like you were going to lose? Oh, no, we would not concede that, Your Honor. No, no, I didn't say you were going to concede it. No, we don't believe that. No, we don't believe that that was the situation and the settlement was favorable in our view. So the point, though, is they chose when to file this declaratory judgment action. They filed it when they had no U.S. sellers and no meaningful plans. And it is a technicality, and maybe they wouldn't have had to do much more to create jurisdiction, but they needed to take some concrete steps to showing action. They're essentially asking for an advisory opinion from this court to clear their way to make U.S. sales. When Balsam has taken no direct action against UCP. But we can't read into the fact that there was sort of once burned. I would assume that UCP was quite shocked to learn that Frontgate took a walk, especially in a situation where it looked like they were going to be on infringing. So we don't know. Maybe the people in China said, oh, maybe this is kind of we don't want to play with people like that. Well, my point, Judge Clevenger, is UCP brought this declaratory judgment action. It timed when it brought it. It brought it within a mere hour of the dismissal of the other suit and before it took any meaningful steps. And even as of the amended complaint, which is why we addressed the declaration, Your Honor, references in paragraph 7 in our brief, even that doesn't have concrete. It seems to me that your core point is since they had the same counsel, they could have structured it. They knew what was happening. It's hard for them to have been – oh, well. I think that they would take issue with that, Your Honor, because Frontgate had two counsels. I thought you said that it was the same counsel. The counsel who stands here today for UCP was also representing Frontgate, but Frontgate also had additional counsel, and it was that counsel that entered into the settlement. I would like to try to address the merits in case the court does deny that jurisdiction. Can I ask just one question on issue preclusion? You didn't say you wanted to talk about it. Yes, I would like to talk about issue preclusion. Just about issue preclusion. I mean, typically in issue preclusion, the first question you ask is what an operative decision that you're trying to preclude or not preclude wasn't necessary to the judgment. And that's Arizona. That's restatement. That's Ninth Circuit law. That's our law. Everybody's law. Because you don't go around precluding something that wasn't necessary. But I gather that issue is not in front of us. When we assess whether or not there was issue preclusion here, we assume that that element was satisfied. No, Your Honor. I think that's part and parcel of our Arizona argument, which is when something is just settled and voluntarily dismissed as part of a settlement with no indication. It's very important, because the district court below clearly pointed out that you chose not to argue the necessary issue in the district court. I think the prong that— His opinion says that. And your adversary in the red brief, in response to your attempt to make an Arizona argument, said, well, you didn't raise that below. And you didn't respond to that in your gray brief. My apologies, Your Honor. Boston did cite Arizona below and make the same point. And make the same point that we're making here, which is that claim— How did the district court then write in its opinion that you only challenged on finality? My memory, and I'll check, and when I get back up, I'll have a more refined response. Can I read the opinion for you? The district court in the summary judgment opinion says the only issue is issue number two or something, not necessity. I don't remember— In the JA is your district court paper about issue preclusion. Is that in there, in the JA? Yes, it's all part of the summary judgment briefing, Judge Toronto. And did you argue that under Arizona, the final resolution of the front gate litigation by settlement precluded any kind of issue preclusion of anything actually litigated inside that case? That we argued that Arizona v. California meant that only claim preclusion would follow from the settlement and the judgment entered as a result of the settlement and not issue preclusion. If that principle is, I think, as strong as you need it to be, which is that even an actually litigated issue in case number one, the resolution does not get issue preclusive effect in case number two simply because case number one was ultimately settled, which is not the facts of Arizona. It's not the facts of the tax case that Arizona relies on. I don't see how that broad proposition could be sustained except on the proposition that you did not argue, which is that if a issue resolution is not necessary to the judgment, then it doesn't count here. That's why I guess I thought it was important what Judge Clevenger was asking. The judge here says you did not argue essentials of the judgment are necessarily decided, which seems to give away that issue. My memory is that the judge didn't – my memory is that the prong one is not about the way that prong one is phrased and what the judge says that we didn't argue. It's not about necessary to the judgment. You address only the second element. He sets up a three-part test. The first element being necessarily decided, he clearly recognizes that that's part of the law. Paulson's argument, I guess, collateral stuff will address only the second element, period. Well, it was decided in the sense that there was an order, a collateral order that decided it. But even if you think we haven't argued the point that you're making, and I think it is fairly included in our argument, that – You haven't told us why it was necessarily – why that element was satisfying. I mean, it's just a lot of words. The short of the matter is if you were going to have made an argument that there can be no issue preclusion here because the decision on a claim construction wasn't necessary to the judgment, you would explain why. It's not necessary to the judgment, Judge Clevenger, because the judgment was just a voluntary dismissal on a stipulation and that didn't reach or decide any merit and doesn't say it's because of the claim construction – Well, but you wanted to have preclusion. The thing you want to preclude has to be necessary to something. There has to be a necessity. A decision on the merit. A decision on the merit, and there was no decision here on the merit. But even if you just look at the prong that the district court does address – There was no ruling on liability. There was a decision on the merits in that it was a dismissal with prejudice. There was a judgment entered that would have claim preclusive effect. So in one sense, it's on the merits, right? I mean, isn't that the way you talk about things? As opposed to the claim against Frontgate, it's a claim preclusion. But, Judge Toronto, there are cases involving settlement, including in the Ninth Circuit. So the St. Paul case that we cite in our reply brief is about a settlement. It's on all fours, except they're applying Alaska law, but Alaska applies a restatement as does the Ninth Circuit, as does this court. And what they say is that they are – a partial summary judgment had been entered on a legal question in the prior case, and then the settlement intervened. That's what the Ninth Circuit says, but settlement intervened. So we don't find that sufficiently final for preclusion and allow the parties to reinvigorate it. But that goes to the sufficient finality question. And I guess, except for the Alaska case and maybe the St. Paul, the Supreme Court cases, Arizona and whatnot, and even the restatement comment, all are talking about situations in which the issue whose resolution is now asserted to be precluded was, in fact, merely consented to the last time, not an adjudicated issue in a case that was ultimately resolved by settlement. Those – But the principle, stepping back from it, the principle is the same, which is that a settlement that doesn't resolve the issue is finally on the merit. So here the claim construction order was never applied. It never was put to the test. It's an interlocutory order that would have been subject to revision by the district court at any time had the case continued. It's, in essence, just like a preview of the jury instruction. We've had at least one case, I think it's called E-Commerce, where we gave issue preclusive effect to – I think you may be thinking of E-Digital. E-Digital, I'm sorry. And E-Digital says in the text of it, it says that the settlement was based on the claim construction. And that's not the case here. This court also has had two other cases, Barden and InterConnect Planning, where parties have voluntarily dismissed cases, and this court has, after claim construction, after partial summary judgment, even in Barden, and this court, to allow for reissue, and this court held the party not barred. And that is consistent with the Ninth Circuit law. In Lubin, the Ninth Circuit held a prior – As a kind of general principle matter or by thinking in a case-specific way about whether the earlier ruling was sufficiently final. Applying the sufficiently final test and noting both the InterConnect Planning and in Barden, that's just the factors I was saying. It's a claim construction's interlocutory order. There's no right to appeal it. This court has repeatedly declined to take things on interlocutory appeal after claim construction. It's inherently not final as things proceed, and this case makes clear. Like the claim construction here in this case, it was later clarified to mean something we didn't understand it to mean. At summary judgment, which is one of the reasons this court doesn't take things on interlocutory review, we never had a chance to appeal it. In Barden and InterConnect Planning, this court reasoned that, although we might have been able to do procedural machinations to try to get it up somehow before settling, we're not required to do that. You're right to appeal it, if you seem to me, that you gave that up in settling. Had you really cared to stand and fight on the claim construction, you wouldn't have settled the case. You would have stood and fought. And the parties have essentially argued the same thing in Barden and InterConnect Planning to this court, and this court held that you're not required, nor would it be a really good policy to force parties who want to settle to otherwise continue to litigate so that the patentee wouldn't have to appear at some point down the road, potentially being held to issue preclusion on a claim construction. It will greatly deter settlement after claim construction if this court holds that the patentee must appeal. I know you wanted to pivot to the merits, but you're so far in past your time. What I'm going to do is let you have your three minutes when you come back up, and you can try to address your claim construction there because you never even got to it. May I just make one sentence about the illegitimate infringement so that I don't unfairly give rebuttal? Keep going. So why... Here, I guess, is the point on the merits that has been the subject of my focus. I'm hard-pressed to think of the word pivot, pivot point, as something that applies when there isn't a two-fold connection, which I think basically Judge Oreck had in mind when he stressed from which turns on together, that there is a physical connection between the object that is pivoting and the pivot point, and that connector is moving at the point. There's motion at the point, which is not true of the accused product here. Here you have this kind of idealized point on the tongue of the device that fits in between the two things. Nothing is moving at that point. It's just a piece on the metal. In fact, that metal piece could actually have a hole there, and nothing would change. But every pivot I think of, which is either a lever on a fulcrum or anything else, has some physical thing that, at the pivot point, is turning right there. And that's true in Figure 18. It's true in every embodiment. But it's not true in the accused product. And it would seem to be captured by Judge Oreck's claim construction that emphasizes it's a point from which there is turning, or from which the second trunk turns on that point. That's my... So is that a claim construction question or a... It may be a compound question, if you can address what I tried to just communicate. Right. So there is no fixed point requirement in the claim language or in the definitions of pivot, given the ordinary definition. Pivot does not include a fixed point limitation. That's a negative limitation that Judge Oreck has read into the claims. And there's certainly no requirement that it be connected on. And I don't think his initial claim construction actually required it to be connected on, because he interpreted rotating to be comparable to pivoting. Let me just try this. It seems to me quite a lot of your brief sounds like it's saying, and I think is actually kind of meant to say, that if you have an object moving in a circular path, then whatever is in the center of the circle is a pivot. And that seems to me troublesome, because it seems to me that focuses on the path of the movement and not the mechanism of the movement. And the pivot point is about a specific mechanism. You can have a lot of mechanisms. If I'm running around a track, I'm not pivoting on the center of the 50-yard line. I'm kind of running around it, and it's at the center of my motion, but the shape of the path is not enough to make the mechanism a pivot. And so what I've been concentrating on is it seems to me that the mechanism that makes a pivot, and I think it may even be slightly different from your connected to, but I think it's actually slightly more than that, that there is a physical connection. That physical connection is determining the motion, or at least part of the motion, and that connector is moving at the point. I don't think it matters whether it's actually a fixed point or not, but it's moving at the pivot. So I'm not sure. That was a long explanation, but if I can just tell you how I understand the patent. It's pivot joint, not pivot point, which I think is important. The claims five is a dependent claim. It makes clear it's limited to the kind of point that you're thinking of when you think of what you think of as your common point and rotating around a circle. And the specification makes clear that's just the simplest embodiment of a pivot. It's not the only thing that can be a pivot joint in this patent. And figure eight does have two different pivot joints, but the pivot joint in figure 18 is the 136. It's the whole thing. It's both pivots. And our expert animation shows that. But if you're willing to assume for me, with me for a minute, that a pivot joint is a joint that has a pivot in it, and so now we're talking about whether there is a pivot. A pivot has to have a pivot point. Maybe it can even move around, but it seems to me it has to have a physical connector where that connector is moving at the pivot point. So it's not just enough that there is, you know, I forget what it is. Sort of ball and track system. Yeah, track system. It's all physically connected, but no motion is taking place at the asserted pivot point by Dr. McCarthy. You don't do the pin. You are not arguing the pins as pivot points. Well, they addressed that in their brief, and we argued that in our reply brief that day. You didn't do it in your blue brief, so you did it. You rested only on the big yellow square on the top. We focused on that. That's true. But the claim construction point, we don't agree that a pivot joint has to have a pivot. The pivot and pivot, a pivot joint could be the simplest embodiment of a pivot, like an axle and a hole. That's what the specification says in column 17, but then it says, but that's just the simplest embodiment of a pivot, and on our brief on page 41 and 42, we show how figure 18 would work. But figure 18 has exactly that pivot point. It's a double thing, right? Yes, Your Honor. One that's actually pivoting at the pivot point in the center, and then there's a separate joint as it moves along the track. But the pivot joint in the figure, this is on page 41 of our brief, the pivot joint is 136. It's both of the pins and the bracket. So a pivot joint doesn't necessarily, the specification doesn't describe a pivot joint as having a pivot, like you're saying. The pivot joint is something that allows a function, which is the second trunk to pivot around the first trunk. And the only connection is that the pivot joint somehow connects those two things. At a minimum, there's a disputed fact on the doctrine of equivalence, because even if you think it requires exactly what you say, on page 62 in the animation there, it shows that their figure moves translationally and rotationally, and the district court resolved the dispute of fact and concluded  Thank you, Your Honor. I'll still give you three minutes. Good morning. May it please the court. I'm Patricia Keeton on behalf of UCP. Is claim one of the 718 patent representative or illustrative of the asserted claim? Claim one, yes. The 718, that was pretty much what the court was looking at during claims construction and during summary judgment, because claim one claims a pivot joint and all parties agreed throughout the entirety of the proceedings below that the pivot joint of claim one was the same thing as pivotably attached and pivotably joined in the 077 patent. Yeah, that was a yes or no. On page nine of the red brief, you say that Balsam made its accusations and pleadings in its local patent rule disclosures and letters to UCP's counsel and threatened to add UCP as a defendant in open court. And you cite to JA 766, where's the citation of the prior case statement? Is that in the record? I don't know. The prior case statement, the front gate, yes, it would be in the record attached to our opposition to the motion to dismiss the first amended complaint. On page nine of the red brief, you say that at the outset of the front gate case, Balsam filed a motion for TRO seeking to remove UCP's trees from the market. Is that UCP's or is it front gate? It's UCP's because UCP made and sold the trees to front gate to then Why aren't they front gate's tree? Well, they're both party's trees. UCP's the manufacturer. So UCP continues to own them. Is that your point? The ones that they have in inventory, the ones that are on order. Some of them are held by UCP until they're sold to front gate. On page 21 of the red brief, you say that UCP was led to believe Balsam would seek to recoup its losses by suing UCP, perhaps in another court where Balsam might seek to evade the claim construction order. What's your factual basis in the record for that? I think it's in the coup declaration that's attached to our opposition to the motion to dismiss the fact. Can you address, I guess the case of controversy question? First of all, looking backwards to the time before the settlement, does the record tell us roughly how many trees UCP had been, had sold through front gate? Yes. The record at the TRO proceedings, front gate alleges that there are millions of dollars of sales of the front gate trees. This is the TRO proceeding in front gate. Yes. We're not talking about one, two, three trees. We're talking about hundreds or thousands of trees. It was very important to them and they were looking forward to the Christmas market and there was a timing on that issue. Right. But also there was testimony at some stage where someone on your side wasn't certain how long the relationship with front gate lasted, but it was two years or three years. They were uncertain. Yes. I think that the, the front gate relationship for this particular tree, I can't give you an exact time period, but it was about maybe two years. And nobody seemed to know. I mean, it was like fuzzy. Right. So I would like to address. We're in the records that hundreds of thousands of trees. I'm sorry. It would be in the TRO proceedings. It wasn't our argument. It was Paulson's argument. So I don't know exactly what it was, but it was, it referred to. FTC filings and statements that front gate made about how popular. And profitable. These trees were. $1,000 Christmas tree. Yes. So if I could address the case or controversy or the. Is there any evidence on the record about what. You CP might do with this relationship with front gate was terminated. And what were their plans for the American market? In the coup declaration. There is evidence of that. So what you CP said. That gets spent a lot of money to design and manufacture these trees. And this judge Clevenger is right where you were right on point with the case. So, you know, if you look at the D.J. case, the D.J. jurisdiction doesn't require that a product actually be on the market. Right. It just, you need to have meaningful preparation. And that's so that you can look at the products and the accused claims. And you know what it is that you're being accused of infringing. We're well beyond meaningful preparations here. We've made the trees. We've designed them. We've patented them. We sold them. And they're still on sale. Even at the time of the settlement. Well, that was because of the terms of the settlement. Well, the terms of the settlement. The terms were that the front gate could sell them. Exactly. And you CP was still potentially liable for six years of past damages. It seems to me that what you're saying is that you CP and front gate are the same entity. That seems to be your argument. No. You CP is the seller or the maker of the tree, the manufacturer and it sells. They're not actually taking action in the United States. Front gate is. You CP is selling to front gate in the United States. How are the contracts drafted? Are they FOB? I don't know how the contracts are drafted. But let me put it this way. Yes, or it could be subject to personal jurisdiction in the record. When, when Boston tells the court that they may add you CP as a party, they say, you know, they're subject to personal jurisdiction here under Beverly Hills fan, because they're selling trees into the United States market. And for foreign activities that induce a domestic sale are covered by 271. Right. I am not, I'm not certain of that. I know the argument at the district court was if you CP makes a tree and sells it into the United States to front gate, it is subject to personal jurisdiction here and can be sued here. So you say, and when you cite to the, to the statement that Boston told the court, you CP, you cite to seven, six, six in the joint appendix way. That's a stretch. What the court said was Balsam told me in the last case that maybe you were going to bring UCP into the litigation. You settled around it. This is like proxy fight in reverse. How do you get, they were that your statement that they were going to sue you? I mean, I apologize if it's that that strong in our brief. The point was the argument was whether or not front gate or whether or not Boston had ever made an actual statement to you CP. And our point, well, they made a statement to the court that they might do it. Yes. Which is enough. There's a statement to you CP that they might do it. They, as counsel told you, they knew you CP was participating in the lawsuit. Right. So when you made a statement in court, he was represented by counsel in the lawsuit. It wasn't represented by counsel. It was indemnifying and, and Balsam knew that you CP was directing the day to day litigation. They knew a statement made in court was being made to you CP. Yeah, but at some stage in the game, obviously you CP wasn't controlling the talk because you CP can't have been happy with what happened in the cell. Well, exactly. So on that point, the timing of the DJ action Balsam says, well, you CP could dictate the timing of it. You CP out of the blue finds that it's customer has settled. It didn't get a release. It was legitimately had a reasonable apprehension that it was about to get sued. It'd been told it had jurisdiction. It was our product to issue in the front gate case. There was no doubt that they accused our product. The only issue is whether or not the settlement mooted the legal dispute because that's what DJ jurisdiction requires, right? A legal dispute between the parties. And it clearly did not because we could still be sued both for the trees that were being sold for past damages. And even for the offers of sales, the clue declaration says that we were, we were in the process. The only way this case would have been mooted on the legal controversy between the parties is if Balsam had given us the covenant, not to sue that we requested. Yes, that happened after we filed too. But the point there is that the suit was active. There's a live controversy that needed to be resolved. It could have been moved with a covenant, not to sue. They didn't give us a covenant, not to sue. Did you say you got a covenant? No, we requested one and we didn't get it. I thought you said something about it happened after you sued. We requested the covenant after we filed our DJ action. And they said, no. Okay. That's off the table. I said, I suggest your honors that if, if this case where our products were actually litigated and they were still on sale and we couldn't get a covenant, not to sue. If this doesn't meet, this would be a C change. I think in this court post metamutual juror. Excuse me. How quickly did you file suit? Miss Maynard said hours. It was the next day. Yeah. So it was shortly thereafter. Less than five hours. It was quick. Did you have a complaint ready to go? We scrambled. We scrambled. My UCP honestly thought, sincerely thought they were about ready to get hit with an infringement suit someplace in a court where the claims construction would be redone and maybe not as favorable to our position. If I may turn to collateral estoppel. Clearly Paulson did raise the Arizona point in its summary judgment paper. So whatever the label, it made the point in terms that absent clearly expressed intent, otherwise settlement agreements and their resulting case dismissals or judgments don't give rise to issue preclusion citing Arizona, among other things, cell therapeutics case. So they didn't waive the theory. So why are they wrong in your view to say that the Arizona principle applies here and makes the claim construction ruling and the front gate case, not a legitimate subject for issue. So your honor, one principle from Arizona three applies. It's just not the one that Paulson's relying on. And let me explain. Arizona three actually had multiple preclusion issues involved. Part a of the opinion talks about issue preclusion and part B of the opinion talks about settlement preclusion. And the problem in Arizona three was that the settlement between the parties, I mean, I think we're on the same page and tell me if I'm wrong. Okay. So Arizona did not need to state the broad principle drawn from comment. The second of judgment section 27 or state the principle as broadly as it states it, because it had a situation in which the issue that was being discussed was actually itself consented. The resolution was consented to, it hadn't been litigated. So that's a different fact. And it also was opaque. So what Arizona said is broader than what it needed to say. So I'm talking here about the principle it articulates. Why does that not, the case is easily distinguishable on its facts, but we don't ordinarily get to do that with Supreme court, right? So why is the principle inapplicable? So the principle is an inapplicable to our case because the issue preclusion and our case isn't a settlement. I think that's the confusion because Balsam's brief talks a lot about the front gate settlement. But the principle that was articulated in Arizona by drawing on comedy of the restatement and Brighton Miller is that nothing in a previously settled case gets issued preclusive effect unless the parties up to that case intended it. Yes. Which is a striking proposition. Yeah. And, and, and I, I think if that's how you read the principle that the Supreme court is laying down that it didn't need to reach it and it's wrong and it doesn't, it doesn't, well, I don't, I mean, why don't we write them a letter? Yes, exactly. It's wrong on those facts because I think what, so Alaska case and St. Paul or St. Paul did same as the Alaska case. Yeah. Okay. So St. Paul was applying state law preclusion through 1738 or something. It was playing Alaska law. In fact, the district court judge, St. Paul fire was called some primary argument below and the district court judge looked at it in detail and said, look, it's Alaska law. It's rarely been cited. It's in a different context. I think, I think this may not excited a couple of our cases as well. Interconnect planning and so harder bargain or something like that. Yes. Let me address those. But let me start with Arizona because I think there's some confusion here. In Arizona, there were two different issue preclusion decisions going on. The first one was about a fact finding in a prior case, whether or not, so in Arizona one, the Supreme court decided what lands were going to get water rights. In Arizona two, the parties argued, Oh, we forgot to include some lands. There are some omitted lands. And so in Arizona three, when there were disputed land, the party said, Hey, you already decided back in Arizona one, what the lands were. And so that's issue preclusion and what the Supreme court said on the issue that was decided on the thing that it, that had actually been decided, which is what the lands were in Arizona one, it said, no, we've already decided what lands are going to get water. That's getting issue preclusion because we decided that issue and we did 1952. You're done. On the second part of the court's order, it's dealing with a settlement and the court says, no, the settlement is an issue preclusion because the parties could advance to, or the plaintiff in that case had advanced to contradictory theories. Either the contract was valid and we were owed money or the contract was void. No court ever decided that issue. There wasn't an opinion. There was nothing to resolve those facts and the party settled. And the court said a settlement itself doesn't give you issue preclusion. That's not what we're talking about. Some issue had to be decided. We have to be able to look to see what the court did. I'm sorry. And it's in the context of that second that the, um, let's call it the comment. The principle is, but then it is stated. It's strikingly broad comedy. It's strikingly broad. And to the extent it's even a, seems to assert a fact that it's plainly false, right? It says in any consent judgment, there is no issue actually decided. That's plainly false. There's no issue decided in the final judgment. That's that would be true. Exactly. And, and, and, and in part that's because of what a settlement is and how it's different. It's settlement. The parties are settling claims here. The, the, um, the Balsam front gate settlement settled claims of infringement, claims of invalidity, legal claims. And we have no way of knowing what the parties agreed to. And the court said nothing about that. So that settlement doesn't get preclusive effect. We've never argued that the settlement gives us preclusive effect. In fact, in the DJ action, we had to go through summary judgment to get a finding of non-infringement because there wasn't preclusive effect. It's a different argument. And what the court found is the settlements are relevant because you see, he is not asking for preclusive effect of a settlement. We never did. What we were asking for was preclusive effect of a court order. But doesn't the distinction you are rightly making between the, um, claim construction adopted in front gate and the infringement question, which was not decided in front gate, um, help one see why essentially the Arizona principle broadly conceived, um, makes sense here, which is that, um, the resolution of the claim construction question, um, was only one step on the way to the final judgment. And the final judgment was ultimately by consent. That is often the case in issue preclusion, right? The only way to. Often the case in several cases, that's what I thought is pretty. Well, it was the, um, at the ninth circuit, uh, dealt with this case or settlement case and Bates versus union oil. Now Bates had gone through, um, uh, through a final decision, but settled thereafter. And it was immaterial to the court decision that the, that the case had settled because. But, but that's after, right? I mean, it's after a final judgment. So that would, that would make it essentially like, um, us bank corp, um, you know, Bonner mall, where if you settle on appeal case goes away, the underlying judgment continues to have preclusive effect unless you get, unless you go back and get it undone. Okay. So maybe it's more like this court's opinion in e-digital, right? Right. But the issue was not raised there. I looked at the briefs. Nobody raised this question. Um, I have it is being cited in the brief. Not for, not for any arguments. I don't think that's true. It was cited once in the summary, in the summary of argument, but no argument was made on it. That's exactly right. But there's no reference to it in the brief because that would not be a cognizable argument here. Okay. So, um, this is why issue preclusion applied in this case and why it applies in, in the context of a Markman hearing is because issue preclusion is simply a principle of whether or not a court has put in enough work, has done all of the work that's necessary to come to a sufficiently final decision. The fact that that decision is in the process of a case, um, the case could go all the way through. It could settle. It doesn't have been modified by the district court. Um, nobody made that request. Not even, that's not what I asked you. And then the answer clearly is yes. Yes. I mean, any order can be modified by a court, probably. But that proves too much because then you would never have issue preclusion until after a final judgment. And clearly issue preclusion is something different than res judicata. What the ninth circuit and what Varden in this court and the second, the restatement says is that appealability is one of the factors that you look at for issue preclusion because in the ninth circuit, a settlement is sufficient judgment, uh, for issue preclusion. And so you're looking at a different thing. We're not talking about a settlement. We're not talking about holding somebody collaterally stopped for a claim. We're talking about an issue that was briefed and decided by the court. And here, this court was the same judge that had done the claims construction. He knew he wasn't going to claim to change his claims construction and, and Folsom admitted that it was final when it told us after the judicial recusal, it wrote to us. And it told the court that judge Orrick made clear he wouldn't be changing his claims construction. So everybody knew that the claims construction was final. I vaguely recall that. That's, that's in the J.A. I think. It is. At the very, very end, maybe. One second, I can find it for you. Cause I think it's an important point. Oh, here it is. It is, um, in the appendix at 10 36. What's it say? And it says, um, while judge Orrick made clear he intended to enter the same claims construction, even if he determined that collateral estoppel did not apply, judge Chen may not. And who said whose words are those? That's, uh, that is Folsom's counsel. This is the email on June 22nd. It is. So there was no, you're saying, you know, it doesn't really make any difference. It's going to be the same anyhow. The difference is that because there was claim preclusion here, Boston didn't get a chance to make any arguments. If the judge had in essence said, well, guess what? I'm not going to issue precludes, but what I'm going to do, I'm going to have a one minute hearing. I'm going to tell you that I'm going to adopt the claim construction before also could have said, your honor, you were wrong. Right. Yes. And tried to convince the judge he was wrong. Yes. He didn't get that opportunity. That's what issue preclusion denied them that opportunity. Right. They made the argument. We can't just say, well, we don't care one way or the other. It would have been the same. So we'll just treat them as though practice. That's where you were going with the language you were quoting. Exactly. Why does it make any difference? Your counsel would say it makes a great deal of difference to her. She didn't really get a chance to go at the judge again. Right. But that's exactly what issue preclusion is. This judge spent an enormous amount of time. There's no question that it was the same patent, the same claim terms that. What we know is that the judge turned around and on the summary judgment slipped something in that wasn't in before, i.e. directly connected. No, it was always in. That's what you're saying. I've read the T.R. I've read the transcripts of the entirety before that. And I would tell you I'm not of the view that it was clearly implied and decided in the original claim construction. And whether or not it was is an issue that you would at least say there's argument on and your adversary wasn't given a chance to argue with the judge about that before the judge slapped directly connected onto the claims. So this whole notion that it doesn't really make much difference one way or the other because the judge would have done the same thing anyway seems to me to be not something that moves me. I understand. I would I would say that in the Ninth Circuit, issue preclusion is a multi-factor test. The judge looked at all of those tests. He applied the facts. It's an abuse of discretion standard. And on the finality, which was the only issue below on finality, he found his own construction sufficiently final. And I don't think he's an abuse of discretion. If I may. What about the directly connected? Pardon me. Yes, if I may. I'm talking about an issue preclusion unnecessary to the judgment. Judge Toronto was talking and I think well about the general principle from Arizona, which also raised below and said, well, you can't have issue preclusion with a settlement, period. Cite Arizona. I understand that to the extent of their argument on Arizona below. Well, their argument about Arizona was that collateral estoppel could not apply to the settlement. And we weren't trying to apply collateral estoppel to the settlement. The subsidiary question once you are addressing a preclusion issue claim or issue preclusion was the judgment that you're seeking necessary to the judgment. If you're applying collateral estoppel to a judgment. How do you apply the necessary to element, which everybody knows exists in preclusion law? How do you apply it to a case that gets settled? Where you have had a fully, let's assume you've had a fully developed fact issue and a decision and interlocked the right even to have an appeal. But then the case settles out. Then you would do it the way Arizona did with the settlement that occurred in that case. You would look to see if there was a court order or some sort of court finding on the issue and whether or not it was necessary in that case or some collateral issue that didn't really address the claims. That wasn't our case because we weren't applying collateral estoppel to a judgment. We were applying collateral estoppel to an issue. And then we took through summary judgment to get to judgment. But if one wants to establish collateral estoppel, don't you have to show that even as to the issue, the claim construction was necessary to assemble? Well, I think in the context of Markman, the claims construction is necessary as its own thing. This is an issue of law. Is it necessary to do a hypothetical question about the scope of the claims that no one cares about? Well, no, because the issues in this case were invalidity and non-infringement. So what Markman tells us is in that step, much like in contract interpretation, the court has to tell us what the claims mean. That's a function of law. That's never going to get appealed. The jury is never going to hear a dispute over Markman terms. And so if this case had settled on some procedural grounds and we were trying to apply issue preclusion to the settlement, then there would be an argument about whether or not a Markman order might have been relevant to whatever the grounds was for the settlement. But we're talking about a Markman order that we're applying collateral estoppel to that issue. And as I understand Bolson's argument, the argument is you should never have issue preclusion to Markman orders. And what I would say to that is issue preclusion applies in litigation generally to all parties. And there is nothing about a Markman order that merits special treatment. I don't think that is their argument. At some point in the proceeding, when the judgment is litigated, when the case is litigated and there's finality to it, I'm sure that they can see that the Markman is a valid determination. Right, and we've reached that point here. Because under the Ninth Circuit law for issue preclusion, it only has to be sufficiently firm. Can I ask you about the merits? Yes, please. So I'm not quite sure what role in, now I'm really thinking about literal infringement, okay, not doctrine of equivalence, is played by this articulation that there has to be a connection all by itself. In part because it seems to me when I look at this slotted device, on the accused product, there's plainly a connection. It just goes up and around and out like that. So they're connected. So I'm not quite sure why it matters whether one says for literal infringement, how one can say there, as I think Judge O'Rourke did say, there is no connection. I took the real point to be that there is no turning on this fixed point. Right. It is a bit confusing in the brief. And I think part of the problem here is that Balsam's brief focused on the inner circle around a fixed point language. So what happened below? But the around got taken out and when it's turned on and the turn on follows from which, which strikes me as meaning that there is a physical connection causing the rotation. And that connector is moving at the point. That's the point I'm just going to keep saying it over and over because I've spent days and days trying to find the words to capture what a pivot is. And I guess that's what I've rested on. Yes. So we did this in the Markman hearing as well. In the joint appendix at 3947. What was the patient number? 3947. But this is in the oral argument about the claim. Right. So what had happened is we had originally proposed a construction that was in a circle around the fixed point. And that's because if you're moving in a circle around a fixed point, the movement has to be on the fixed point. No, it doesn't. Well. If you're running around a circular track, it absolutely does not. Okay. That was the claims construction that was proposed. And I don't know if George Orrick did something helpful to you. He did. That's too broad. He said, no, that's too broad. He said also he was dealing with this figure 18. And the video is on how that the ends of the second trunk move. And what George Orrick said at the claims construction hearing was like, I don't care about how things. How the trunks move. I don't care about in a circle. What is claimed here is a structure. And we're going to have a mark. And we're going to have a construction that defines the structure. And so he said, we're taking out in a circle. And I said to him at this, at this point, I said, okay, well, if we're going to take out in a circle. Then we need to make sure that, that we say it. On a fixed point. Because there's a problem having a construction where something is moving around a fixed point. That's not physically attached. And so we had this conversation. And judge Orrick agreed and he put in from. From which from which. And on a fixed point from which the second trunk turns. On a fixed point to address this very issue. And it, and it wasn't a surprise. It wasn't. You know, they knew exactly because in the joint appendix. At 39 59. We had a joint. This is Balsam's counsel. And he says, oh, judge. I think you're mistaking when you say a pivot joint. Or as requiring pivoting to occur on that point. We all knew that that was what the claims construction was. Nor was there any dispute over what a pivot means. During, during the claims construction process. Okay. Also never offered an ordinary meaning of pivots. Not one time it didn't dispute. Our dictionary definition of pivot or that pivot joint had to be construed as a joint term. Also didn't dispute that ordinary meaning because it's position. Was. It's position was that the patentee had offered a special meeting. You're 20 minutes past. Okay. So if I can just wrap it up. Okay. One minute. Special meaning is at 38. Okay. Can, can, can I tell, I want to just briefly address the summary judgment because I haven't had a chance to talk at all about. As I said, you're 20 minutes. All right. You can finish your sentence. Okay. You brought a no. No evidence summary judgment motion. And it's important here because also says we failed to prove this. We failed to prove that. And opposing our summary judgment motion. There's no claim analysis. No limitation by limitation analysis. There is nothing to show infringement. Even if McCarthy's declaration. Thank you, your honor. Were you precluded in the summary judgment filing from making claim construction arguments? We were precluded. No, the summary judgment arguments were lumped in both the, their motions have lateral stop. Apply. First, there's no collateral stop. And the second is that we have a claim construction argument. The judge has already indicated that he had, he was going to adopt his previous or construction. The only question was whether he was going to adopt it. Just important. The record in a way such that we could appeal it to this court, which is what we said. You know, we still object to your claim constructions, but at least let us appeal it. Or whether their view is going to prevail and we were going to be precluded. We did. So we did. We didn't argue a new, the claim constructions, but we did renew our original request and he did allow us to import all that into this record. I assume. So in case you disagreed with his argument, that it was precluded, we could appeal it. And I think it is important that we didn't re we weren't requiring him to do a whole do over. We were just, we just want it to be entered in this case in such a way that we could appeal it. And judge Clevenger, we did raise the issue on page a appendix 1120. We, this is a reading from the collateral stopper section of the brief below determination of the issue in the prior litigation must have been a critical and necessary part of the judgment and the earlier action absent clearly expressed intent. Otherwise settlement agreements and the resulting case dismissals and judgment don't give rise to issue preclusion. The language you quoted me before where you gave me the district court language, the very next sentence says, nobody disputes this is the very same claim construction issue, but that we don't see it is the same issue. The question is whether it was necessary to any judgment on the merit from that we have contested all along on, on the fixed point, your honor, that what the claim construction that's wrong. Is that fixed point is a negative limitation read into the claims. That's nowhere. The patent uses fixed a hundred times and never in conjunction with pivoting the point around which something is rotating can move. It does not need to be the point of connection. Judge Toronto. When I point you to the examiner, when he, when he distinguished Smith, he called that pivoting. This is the screw in prior art. And the, the, that could be a hollow tube and he saw it pivoting around the axle up and down. Well, the connection has to be connected to the axle. Something can pivot around something that's not connected to it. On DOE, on the judge, the side of it, the fact the judge held both for the same rationale for the fact finder. No reasonable fact finder could find DOE here. Dr. McClellan's infringement because their product moves only by translation. Dr. McCarthy, our experts testified that is not so. And in fact, it is engineering. It's impossible. But I guess the, the, the. A couple of things in rejecting DOE, but the one that I guess. I want to focus on independent of vitiation. Was it paragraph 33, the way paragraph of Dr. McCarthy, which says the way is the same because the path of the thing is still a circle. And that seems to me to be just insufficient on its face because it doesn't address the mechanism by which the path ends up being the same. So. Looking at, at the DOE analysis, there's a page a 1149 in the LA 1159 Dr. McCarthy's declaration. Yeah. And so this is in the face of no evidence on their part. Paragraph, paragraph a hundred. I'm sorry. So it's 1149. Yep. By one paragraph on the way. Well, I think you have to read the whole thing in context because I think he said, well,  I think it's exactly the same way. This figure on page a 1150. Where he's put the blue tube over there, over there. Movable trunk. And, and shown how. A green pivot. If it were attached to that would move. And their thing is moving in exactly the same way as figure 18. And it looks just like figure 18, which they conclude is covered by the, by the client. Did anybody make anything in this case of the fact that the track is not actually circular, but has straightaways like a running track. So it in fact would not be just like a, at the end of a radius. I didn't see anybody making it. So they argue, and that's kind of, they argue that they are saying moves only translationally somehow, but translational movement doesn't change the angle of something as our expert testified. And so it's physically impossible to not rotate and still invert, which their tree clearly does. And this is a dispute of fact. Even if you reject all of our other arguments, which I wish you would not, but this is a dispute of fact and the judge wrongly squarely decided to dispute his act. And Dr. McArthur really flies his plane discretion because he shows that. I appreciate your indulgence. And if the court has any further questions, I'd be happy to. Thank you. We request that you reverse.